# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JENETTE BUSCH,              )
       Plaintiff,          )     **Civil Action No. 1:15-cv-239**
                       )
       **v.**               )
                       )
**OSWAYO VALLEY SCHOOL**   )
**DISTRICT,**                )     **Magistrate Judge Susan Paradise Baxter**
       **Defendant.**      )


## MEMORANDUM OPINION[1]

M.J. Susan Paradise Baxter

      Presently pending before this Court is Defendant's motion to dismiss Plaintiff's amended complaint. For the reasons set forth below, the motion to dismiss will be granted in part and denied in part.


### I.     Relevant Background and Procedural History

      On August 13, 2007, Defendant hired Plaintiff to teach Business and Computer classes and to serve as the faculty advisor for the Future Business Leaders of America (FBLA). ECF No. 9 ¶¶ 16-17. In December 2007, Plaintiff received an official diagnosis of major fecal incontinence.[2] Id. ¶ 11. Plaintiff's condition substantially impairs her bowel functions and causes her to require immediate access to a bathroom. Id. ¶ 12.

      Plaintiff promptly informed Defendant of her condition and requested accommodations. Id. ¶ 18. Initially, Defendant permitted Plaintiff to take antidiarrheal medication and to

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment.

[2] The parties do not contest that a diagnosis of major fecal incontinence qualifies as a disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.

occasionally sit down for twenty minutes when she felt that she was going to lose control of her bowels. Id. ¶ 19. While these measures did not cure her condition, they allowed her to maintain better bowel control and perform her job. Id. ¶ 20.

In August 2012, Defendant hired Dr. Frank McClard to serve as the district's superintendent and acting principal. Id. ¶ 21. Plaintiff met with McClard at the end of the 2012-2013 school year to discuss her disability. Id. ¶ 22. In order to accommodate her bowel condition, Plaintiff requested that McClard relocate her classroom to a location closer to a bathroom. Id. ¶ 23. McClard ignored her request and, rather than offer alternative accommodations, immediately disciplined Plaintiff for sitting down to control her bowels. Id. ¶¶ 24-25.

In September 2013, McClard sent an email to Plaintiff requesting that she meet him in his office for disciplinary purposes. Id. ¶ 28. McClard informed Plaintiff that Defendant required her to walk around and stand up every moment during the school day, aside from her preparation period. Id. ¶ 31. McClard warned her that she would be disciplined more harshly if she continued to sit down to control her bowels. Id. ¶ 32. McClard also furnished her with a four-page letter of formal discipline and ordered her to provide a written response to the letter by the following day. Id. ¶¶ 35, 38. Plaintiff avers that these punishments were unique to her in that other teachers were not punished for sitting down during the workday or required to respond in writing to disciplinary actions. Id. ¶¶ 34, 39.

Towards the end of October 2013, McClard ordered Plaintiff to attend another disciplinary meeting at which he reiterated that she was not permitted to sit down to control her bowel condition and disciplined her for doing so. Id. ¶¶ 41-43. Plaintiff was again ordered to provide a written response to the disciplinary letter she received from McClard. Id. ¶ 44.

A third disciplinary meeting took place under similar circumstances in November 2013. Id. ¶ 45. At that meeting, McClard handed Plaintiff a memo in which he requested that Plaintiff provide him with a written response as to why he should not fire her. Id. ¶¶ 46-47. Plaintiff contends that the stress and anxiety caused by these repeated disciplinary meetings actively worsened her bowel condition. Id. ¶ 48. McClard also threatened to terminate Plaintiff unless she resigned her position as FBLA advisor, stopped complaining about his treatment of her, stopped requesting accommodations, and "shut up" about her allegations of retaliatory and unfair treatment. Id. ¶¶ 50-51.

On March 21, 2014, Plaintiff provided McClard with a note from her doctor requesting an accommodation for her condition. Id. ¶ 53. McClard promised that he would raise her request for accommodations with the school board but failed to do so. Id. ¶ 54. Instead, McClard continued to threaten her with verbal and written discipline for her requests for accommodation. Id. ¶ 55.

Around the same time, Plaintiff began to hear other staff members at the school district openly discussing and joking about her condition. Id. ¶¶ 58-59. Plaintiff avers that McClard must have informed the other staff members about her condition because he was one of the few people within the district that was aware of her bowel troubles. Id. ¶ 57.

On April 15, 2014, McClard notified Plaintiff that he had decided not to present the school board with her request for accommodations. Id. ¶ 62. McClard also confirmed that Plaintiff would not be permitted to sit during the workday and that no other accommodations would be provided. Id. ¶¶ 63-65. In response, Plaintiff "felt compelled to retire due to the stress and anxiety caused by McClard's actions that actively made her condition worse and

[Defendant's] refusal to provide her with an accommodation." <u>Id</u>. ¶ 66.  Plaintiff tendered her

retirement notice on June 19, 2014.  <u>Id</u>. ¶ 67.

On June 27, 2014, Plaintiff filed a detailed Intake Questionnaire with the Equal

Employment Opportunity Commission ("EEOC") alleging discrimination and retaliation based

on her disability.  <u>Id</u>. ¶ 7; ECF No. 14-1.  Plaintiff emphasized two specific instances of

discrimination: McClard's refusal to raise her accommodation request with the school board on

April 15, 2014, and her discovery that members of the staff were talking and joking about her

medical condition.  ECF No. 14-1 at 2.  Plaintiff also noted that she had first requested

accommodations from Defendant beginning on May 31, 2013, but had been threatened with

termination and other discipline in response.  <u>Id</u>. at 3.  Plaintiff checked a box ("Box 2") at the

end of the form to indicate that she wanted to file a charge of discrimination and authorize the

EEOC to open an investigation.  <u>Id</u>. at 4.

Plaintiff followed up by filing a Charge of Discrimination with the EEOC on September

4, 2014, again alleging discrimination and retaliation based on her disability.  ECF No. 9 ¶¶ 6, 8;

ECF No. 14-2.  In response to a box on the form asking about the timeframe of the alleged

discrimination, Plaintiff stated that the earliest incident of discrimination took place on April 15,

2014, when McClard refused to consider her request for relocation of her classroom.  ECF No.

14-2 at 1.  Plaintiff stated that she had experienced further discrimination on May 1, 2014, when

she heard co-workers discussing her medical condition, and on June 19, 2014, when she felt

compelled to resign her employment.  <u>Id</u>.  In addition to those three discrete incidents, Plaintiff

generally described her previous attempts to seek accommodation:

> I believe I have been discriminated against because of my medical
> condition . . . in that, after [McClard] promised to do everything in his
> power to help me relocate my classroom (reasonable accommodation)
> when I made several requests, both verbally and written [but he] refused

to bring the issue to the Board. Shortly after my initial request, Dr. McClard attempted selective enforcement towards me of incidental issues that went on for months aggravating my medical condition. He threatened to have me fired if I did not resign my position as advisor to a student organization and stop talking to people (referring to legal counsel) with regards to my being discriminated against. When I requested the reasonable accommodations in writing I said that I might file for a disability if it could not be provided. Moreover, Dr. McClard was one of the only staff members aware of my medical condition, which became public information and induced other medical ailments. As a result, I felt compelled to resign my employment because I could no longer tolerate the work environment which not only exacerbated my disability but also induced other medical ailments.

Id. at 2.

Plaintiff received a Right to Sue letter from the EEOC on September 22, 2015. ECF No. 9 ¶ 10. She commenced the instant action on September 30, 2015 (ECF No. 1) and filed a four-count amended complaint on December 11, 2015. ECF No. 9. Her amended complaint asserts claims of disability discrimination (Count I), failure to accommodate (Count II), hostile work environment (Count III), and retaliation (Count IV). Id.

On December 28, 2015, Defendant filed the instant motion to dismiss, arguing that portions of Plaintiff's claims are untimely and/or unexhausted. ECF No. 10. Defendant also contends that Plaintiff has failed to state a claim with respect to her allegations of discrimination, hostile work environment, and retaliation.[3] Id. Plaintiff filed a brief in opposition to Defendant's motion on January 22, 2016. ECF No. 14. This matter is now ripe for disposition.

## II.    Standard of Review

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the

---

[3] Defendant does not challenge the sufficiency of Plaintiff's pleading with respect to her failure to accommodate claim.

complaint must be accepted as true.  <u>Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007).  A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007) (rejecting the traditional 12(b)(6) standard set forth in <u>Conley v. Gibson</u>, 355 U.S. 41 (1957)).  <u>See</u> <u>also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009)(specifically applying <u>Twombly</u> analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint.  <u>See</u> <u>California Pub. Employee Ret. Sys. V. The Chubb Corp.</u>, 394 F.3d 126, 143 (3d Cir. 2004) <u>citing</u> <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  Nor must the Court accept legal conclusions set forth as factual allegations.  <u>Twombly</u>, 550 U.S. at 555, <u>citing</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).  <u>See also</u> <u>McTernan v. City of York, Pennsylvania</u>, 577 F.3d 521, 531 (3d Cir. 2009)("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level."  <u>Twombly</u>, 550 U.S. at 556, <u>citing</u> 5 C. Wright & A. Miller, <u>Federal Practice and Procedure</u> § 1216, pp. 235-236 (3d ed. 2004).  Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face."  <u>Id.</u> at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief."  <u>Smith v. Sullivan</u>, 2008 WL 482469, at *1 (D.Del.) <u>quoting</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008).  "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for

enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

The Third Circuit has expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
> > First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

"The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case." Tacinda Corp. v. DaimlerChrysler AG, 197 F. Supp.2d 42, 53 (D.Del 2002) citing Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Indeed, the Supreme Court has held that complaint is properly dismissed under Rule 12(b) where it does not allege "enough facts to state a claim to relief that is plausible on its facts," Twombly, 550 U.S. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The question is not whether the plaintiff will prevail in the end but, rather, whether the plaintiff is entitled to offer evidence in support of his or her claims. Swope v. City of Pittsburgh, 90 F.Supp.3d 400, 405 (W.D. Pa. 2015) citing Oatway v. American International Group, Inc., 325 F.3d 184, 187 (3d Cir. 2003).


### III.    Defendant's Motion to Dismiss

Defendant's motion seeks partial dismissal of the amended complaint on several grounds. First, Defendant argues that all allegations relating to incidents that occurred prior to November 8, 2013, are untimely. Defendant also contends that Plaintiff has failed to exhaust her administrative remedies with respect to any incidents occurring prior to April 15, 2014. Finally, Defendant contends that Plaintiff cannot maintain her claims for disability discrimination and retaliation because she did not suffer an adverse employment action; cannot establish that she was subjected to a hostile work environment; and cannot demonstrate that she was constructively discharged. These issues will be addressed *seriatim*.

**A. Timeliness**

A plaintiff asserting a disability claim pursuant to the ADA "has 300 days from the alleged unlawful employment practice to file a charge of employment discrimination with the EEOC." Patterson v. AFSCME # 2456, 320 F. App'x 143, 145 (3d Cir. 2009) (citing 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a)). Incidents occurring outside of this 300-day timeframe are considered untimely and cannot support a recovery under the ADA. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002) ("A claim is time barred if it is not filed within [the 300-day] time limit[]"); Oden v. SEPTA, 137 F.Supp.3d 778, 786 (E.D. Pa. 2015) (noting that a claim falling outside of the 300-day time frame "is considered time-barred" and cannot support recovery under the ADA).

In the instant case, Plaintiff filed her Charge of Discrimination with the EEOC on September 4, 2014. Looking back 300 days, Defendant requests dismissal of any incidents that occurred prior to November 8, 2013. This would primarily affect the three alleged instances in which Plaintiff was disciplined in writing by McClard for sitting during the workday and for requesting accommodations. See ECF No. 9 ¶¶ 28-52.

Plaintiff responds that her EEOC Intake Questionnaire, filed on June 27, 2014, constitutes a "charge of employment discrimination" for purposes of tolling the 300-day limitations period. If Plaintiff is correct, the operative look-back date becomes August 31, 2013, and almost all of the incidents alleged in the Amended Complaint would fall safely within the limitations period.[4]

The United States Supreme Court has instructed that the EEOC's Intake Questionnaire can be considered a "charge" for exhaustion and timeliness purposes if it meets two requirements. Federal Express Corp. v. Holowecki, 552 U.S. 389, 401-02 (2008). First, it must contain all of the factual information required by the pertinent EEOC regulations, including the name of the charged party and an allegation of discrimination. Id. Next, it must be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." Id. The latter requirement is satisfied where an employee requests remedial action from the EEOC by checking "Box 2" on the standard Intake Questionnaire. Hildebrand v. Allegheny County, 757 F.3d 99, 113 (3d Cir. 2014).

Under the "permissive" guidelines established by the Supreme Court in Holowecki, Plaintiff's intake paperwork clearly satisfies the requisite elements of a charge.[5] Her

---

[4] The lone exception would appear to be Plaintiff's allegation that she first sought accommodations "at the end of the 2012-2013 school year" and was disciplined in response. ECF No. 9 ¶¶ 22-25. Based on a typical school schedule, the 2012-2013 school year would almost certainly have concluded prior to August 31, 2013.

[5] Although Defendant objects to Plaintiff's failure to attach the Intake Questionnaire to her amended complaint, the Third Circuit has instructed that this type of omission is not fatal:

> Hildebrand concedes that the Intake Questionnaire was not attached to his amended complaint. He did, however, submit the questionnaire as an exhibit to his response to Allegheny County's motion to dismiss. While a court is limited to considering the pleadings in deciding a Rule 12(b)(6) motion, we are satisfied that the Intake Questionnaire was properly before the District Court. There was no dispute as to its authenticity, and it directly corroborated Hildebrand's claim that he had satisfied the conditions precedent to filing suit under the ADEA. See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir.2010) ("In deciding a Rule 12(b)(6) motion, a court must consider

Questionnaire details several specific and detailed allegations of discrimination, including McClard's refusal to accommodate her condition by allowing her to sit or moving her classroom, McClard's threats of termination for talking to counsel and attempting to alleviate her bowel condition, and the fact that co-workers were openly talking about her condition. ECF No. 14-1 at 1-3. The form identifies "Oswayo Valley School District" as the organization responsible for the alleged discrimination. Id. at 1. Finally, Plaintiff checked off the critical "Box 2" on the form to indicate a request for action from the EEOC. See, e.g., Hildebrand, 757 F.3d at 113 ("[A]n employee who completes the Intake Questionnaire and checks Box 2 unquestionably files a charge of discrimination."); see also 29 C.F.R. § 1601.12(b) (stating that a submission to the EEOC will be sufficient to constitute a charge if it is "sufficiently precise to identify the parties, and to describe generally the action or practices complained of"). As each of the Holowecki requirements is plainly satisfied, Plaintiff may seek relief for any alleged violations occurring as far back as August 31, 2013.

### B. Administrative Exhaustion

Defendant next contends that Plaintiff failed to exhaust her administrative remedies as to any claims arising prior to April 15, 2014. Plaintiff maintains that each of her claims is fairly encompassed within the scope of her administrative filings.

It is axiomatic that a plaintiff must exhaust her administrative remedies before filing an ADA claim in federal court. Williams v. E. Orange Cmty. Charter Sch., 396 F. App'x 895, 897 (3d Cir. 2010) ("Before filing a complaint, a plaintiff alleging discrimination under the ADA

---

only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.").

Hildebrand, 757 F.3d at 112 n. 2.

must exhaust her administrative remedies by filing a charge with the EEOC."). The parameters of the ensuing federal court action are defined by "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Hicks v. ABT Associates, Inc., 572 F.2d 960, 966 (3d Cir. 1978); see also Barzanty v. Verizon PA, Inc., 361 F. App'x 411, 413 (3d Cir. 2010) (limiting suit in district court "to claims that are within the scope of the initial administrative charge."). Thus, a claim that has not been specifically presented in an administrative charge must be evaluated to determine "whether the acts alleged in the subsequent [federal] suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996) (quoting Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984)).

On her EEOC Charge, Plaintiff filled out a box indicating that the "earliest" date of discrimination was April 15, 2014, the date on which McClard denied her written request for accommodations. Defendant suggests that Plaintiff should be prohibited from asserting any earlier instances of discrimination because such incidents would not be within the temporal scope of her administrative filing. However, as noted by the Third Circuit, the exhaustion requirement is not so intractable as to "preclude a plaintiff from asserting a claim for the mere failure to check a box on an EEOC Charge Form." Barzanty, 361 F. App'x at 414; see also Boyle v. City of Phila., 2016 WL 1021131, at *3 (E.D. Pa. Mar. 14, 2016) ("The failure to check a particular box on the charge form does not necessary mean a plaintiff has failed to meet [her] administrative burden."). To the contrary, "[t]he most important consideration in determining whether the plaintiff's judicial complaint is reasonably related to his EEOC charge is the factual statement [contained in the charge]." Ford-Greene v. NHS, Inc., 106 F.Supp.3d 590, 607 (E.D. Pa. 2015) (quoting Doe v. Kohn, Nast & Graf, P.C., 866 F.Supp. 190, 197 (E.D. Pa. 1994)).

In the instant case, each of the incidents described in the amended complaint is set forth in the narrative portion of Plaintiff's EEOC Charge.  For example, Plaintiff stated that, shortly after her initial request for reasonable accommodation, "Dr. McClard attempted selective enforcement towards me of incidental issues that went on for months aggravating my medical condition."  ECF No. 14-2 at 2.  She also averred that her initial verbal request for accommodation was met with threats of termination and orders to stop speaking with counsel and to resign her position as FBLA advisor.  Id.  Although she did not provide the dates for those incidents on the charge form, the allegations are presented in sufficient detail that the EEOC's investigation would necessarily have encompassed each of those events.  See Antol, 82 F.3d at 1295 (holding that a claim is considered exhausted if it is "fairly within" the scope of the administrative complaint of the investigation arising therefrom); Howard v. Phil. Housing Authority, 2013 WL 5761299, at *3 (E.D. Pa. Oct. 24, 2013) (noting that, although plaintiff only checked the box for "retaliation" on her charge form, the accompanying narrative statement detailed instances of race and gender discrimination as well, allowing the court "to reasonably conclude that the scope of the EEOC investigation would have covered race and gender discrimination").  To exclude those incidents from this action based on nothing more than Plaintiff's response in a single box would elevate form over function in the precise manner proscribed by this Circuit's long-standing EEOC jurisprudence.  Barzanty, 361 F. App'x at 414; see also Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398 (3d Cir. 1976) (explaining that the preliminary requirements of filing a charge with the EEOC are to be interpreted in "a nontechnical fashion"); Styer v. Frito-Lay, Inc., 2016 WL 406715, at *5 (M.D. Pa. Jan. 11, 2016) (noting that the exhaustion requirement is not to be construed "in a rigid and mechanical

fashion"); <u>Schouten v. CSX Transp., Inc.</u>, 58 F.Supp.2d 614, 616 (E.D. Pa. 1999) (noting that courts have given "a fairly liberal construction . . . to EEOC charges").

Having determined that Plaintiff's claims are neither time-barred nor unexhausted, the Court will next consider whether Plaintiff has stated a viable claim for relief for each.

### C. Disability-Based Discrimination (Count I)

To establish a claim for discrimination under the ADA, the plaintiff must establish that: "(1) [she] is a disabled person within the meaning of the ADA; (2) [she] is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [she] has suffered an otherwise adverse employment decision as a result of discrimination." <u>Gaul v. Lucent Techs., Inc.</u>, 134 F.3d 576, 580 (3d Cir. 1998). An adverse employment action "is one that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" <u>Cunningham v. Nordisk</u>, 615 F. App'x 97, 100 (3d Cir. 2015) (quoting <u>Storey v. Burns Int'l Sec. Servs.</u>, 390 F.3d 760, 764 (3d Cir. 2004)).

Defendant exclusively challenges Plaintiff's discrimination claim on the third prong, arguing that Plaintiff has failed to plead the existence of a "serious and tangible" adverse employment decision. <u>Id</u>. Defendant characterizes the majority of Plaintiff's allegations as mere complaints of negative performance evaluations and threats of termination, correctly noting that such incidents are typically insufficient to constitute adverse actions within the meaning of the ADA. <u>See</u>, <u>e.g.</u>, <u>Hibbard v. Penn-Trafford Sch. Dist.</u>, 2014 WL 640253 (W.D. Pa. Feb. 19, 2014) (holding that placement on a performance improvement plan accompanied by threats of termination were not sufficient to effectuate "a significant change in employment status")

(quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). However, Defendant's

argument overlooks or ignores many of the most serious allegations in the amended complaint.

For example, Plaintiff avers that Defendant not only refused to grant reasonable accommodations

for her physical condition, but declined to even engage in any sort of interactive process with

respect to accommodating her disability. The Third Circuit has explicitly held that "refusing to

make reasonable accommodations for a plaintiff's disabilities" is an adverse employment

decision. Williams v. Phila. Housing Auth. Police Dept., 380 F.3d 751, 761 (3d Cir. 2004). As

explained by the Court:

> The ADA specifically provides that an employer "discriminates" against
> a qualified individual with a disability when the employer does "'not
> mak[e] reasonable accommodations to the known physical or mental
> limitations of the individual unless the [employer] can demonstrate that
> the accommodation would impose an undue hardship on the operation of
> the business of the [employer].'" Taylor, 184 F.3d at 306 (quoting 42
> U.S.C. § 12112(b)(5)(A)) (alterations in original). "Reasonable
> accommodation" further "includes the employer's reasonable efforts to
> assist the employee and to communicate with the employee in good
> faith," Mengine v. Runyon, 114 F.3d 415, 416 (3d Cir.1997), under what
> has been termed a duty to engage in the "interactive process."

Id. at 761-62. See also Evans v. Cernics, Inc., 2016 WL 4382751, at*9 (W.D. Pa. Aug. 16,

2016) (in the context of an ADA claim, the "adverse employment decision is the refusal to make

reasonable accommodations for a plaintiff's disability.") (internal quotations omitted); Pallatto v.

Westmorland Cnty. Children's Bureau, 2014 WL 836123, at *10 (W.D. Pa. Mar. 4, 2014) ("The

refusal to make reasonable accommodations for a plaintiff's disabilities constitutes an adverse

employment decision.").

    As noted above, Plaintiff's allegations in this regard are detailed and specific. She

alleges that she approached McClard on several occasions to request accommodations and was

routinely ignored or disciplined for her requests. ECF No. 9 ¶¶ 28-52. When Plaintiff produced

a doctor's note to support her request, McClard again threatened her with discipline and refused to initiate the interactive process by presenting her request to the school board. Id. ¶¶54-55, 62-65. These allegations satisfy the pleading requirements for an adverse employment action in the ADA context. Williams, 380 F.3d at 761, 771.

Plaintiff has also averred that she was constructively discharged from her position. It is well-settled that constructive discharge can constitute an adverse employment decision. Penn. St. Police v. Suders, 542 U.S. 129, 143 (2004). Determining whether an employee was constructively discharged requires a court to consider "whether a reasonable jury could find that the employer permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign." Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 167 (3d Cir. 2001).

In the context of disability discrimination, several courts have noted that a failure to accommodate or to engage in the interactive process may support an inference of constructive discharge. See, e.g., Rabuffo v. VCA Smoketown Animal Hosp., 2016 WL 3165606, at *6 (E.D. Pa. Jun. 6, 2016) (allegation that defendant refused to accommodate plaintiff's disability after a surgery despite "repeated requests" was sufficient to state a claim for constructive discharge); McIntyre v. Archuleta, 2015 WL 4566730, at *13 (W.D. Pa. Jul. 29, 2015) (holding that the defendant's refusal "to consider accommodating McIntyre, or to engage in the interactive process with her in order to determine whether a reasonable accommodation was possible," along with evidence of disciplinary retaliation, created a genuine issue of fact as to constructive discharge); Pagonakis v. Express LLC, 315 F. App'x 425, 430 n. 4 (3d Cir. 2009) ("To the extent Pagonakis asserts that Express' failure to accommodate . . . resulted in her constructive discharge, she may present that theory to a jury."). As explained by the Court of Appeals for the Sixth Circuit:

> Assuming that Smith was denied a reasonable accommodation that
> forced her to work well in excess of her medical restrictions, a jury
> reasonably could infer that the USPS (through Mullin) knew that Smith's
> working conditions would become intolerable to a reasonable person
> suffering from her particular disability. As noted, Mullin rescinded
> and/or refused to honor Smith's hours-of-work accommodation that had
> been in place since 1997, denied Smith the reasonable accommodation of
> delegating her non-essential accounting duties, and forced her to work
> long stretches of over-forty-hour weeks with few or no days off,
> resulting in the foreseeable consequence that Smith's health would
> markedly deteriorate. Thus, a reasonable jury could conclude that the
> USPS knowingly and deliberately "turned its back" on Smith and,
> therefore, the USPS could foresee that Smith would be compelled to quit
> her job in order to preserve her health.

Smith v. Henderson, 376 F.3d 529, 537-38 (6th Cir. 2004).

In the instant case, Defendant's alleged refusal to accommodate Plaintiff's disability is compounded by the allegation that McClard actively discouraged her from requesting accommodations by disciplining her and threatening her with termination. As in each of the cases cited above, these allegations are sufficient – at least at this early stage in the proceedings – to suggest that Plaintiff suffered an adverse employment action in the form of a constructive discharge. Accordingly, Defendant's motion to dismiss Plaintiff's discrimination claim will be denied.

### D. Retaliation (Count IV)

A plaintiff asserting a retaliation claim pursuant to the ADA must allege that: (1) she engaged in a protected activity; (2) the employer took an adverse action against the employee; and (3) there was a causal connection between the protected activity and the adverse action. Krouse v. American Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997). To establish an adverse employment action, the plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a

reasonable worker from making or supporting a charge of discrimination." <u>Daniels v. School</u> <u>Dist. of Phila</u>., 776 F.3d 181, 195-96 (3d Cir. 2015) (quoting <u>Burlington N. & Santa Fe Ry. Co.</u> <u>v. White</u>, 548 U.S. 53, 68 (2006)). Defendant again challenges only whether Plaintiff sustained an adverse employment action.

As noted above, Plaintiff has alleged facts suggesting that she was constructively discharged after she requested reasonable accommodations for her disability. The same allegations are sufficient to satisfy the adverse action requirement of her retaliation claim. <u>See,</u> <u>e.g</u>., <u>Clegg v. Falcon Plastics, Inc</u>., 174 F. App'x 18, 27 (3d Cir. 2006) ("A constructive discharge can count as an adverse employment action for retaliation purposes."); <u>Hannis-Miskar</u> <u>v. North Schuylkill Sch. Dist</u>., 2016 WL 3965209, at *5 (M.D. Pa. Jul. 22, 2016) (allegation of constructive discharge satisfied adverse employment action requirement for both discrimination and retaliation claims). Defendant's motion to dismiss Plaintiff's retaliation claim fails for the same reasons discussed above.

### E.  Hostile Work Environment (Count III)

Finally, Defendant challenges whether Plaintiff can establish a hostile working environment. A successful claim for a hostile work environment under the ADA requires proof that: (1) the plaintiff is a qualified individual with a disability; (2) the plaintiff was subjected to unwelcome harassment; (3) the harassment was based on her disability or request for an accommodation; (4) the harassment was sufficiently severe and pervasive to alter the conditions of her employment and create an abusive working environment; and (5) the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. <u>Walton v. Mental Health Ass'n of Se. Pa</u>., 168 F.3d 661, 667 (3d Cir. 1999). In considering

whether a work environment is sufficiently hostile or abusive to support a claim, courts have

held that "the conduct must be extreme [enough] to amount to a change in the terms and

conditions of employment." Carver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005). This

determination is made after considering the totality of the circumstances including "the

frequency of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

employee's work performance." Id. at 263. Simply put, "offhanded comments and isolated

incidents" are insufficient to sustain a hostile work environment claim. Id.

Plaintiff largely supports her hostile work environment claim by relying on the fact that

Defendant refused to accommodate her disability and forced her to remain standing throughout

her workday despite knowing that it would exacerbate her bowel condition. However, "the mere

denial of a requested accommodation, with nothing more, will not rise to the level of a hostile

work environment." Floyd v. Lee, 85 F.Supp.3d 482, 517 n. 54 (D.D.C. 2015). Nor may a

plaintiff simply "cobbl[e] together a number of distinct, disparate acts" – the same acts that make

up a separately actionable claim for failure to accommodate or disparate treatment – and label it

"a hostile work environment." Helvy v. Allegheny Cnty, 2015 WL 672262, at * (W.D. Pa. Feb.

17, 2015) (quoting Brantley v. Kempthorne, 2008 WL 2073913, at *8 (D.D.C. May 13, 2008));

see also Mercer v. SEPTA, 608 F. App'x 60, 63 (3d Cir. 2015) (emphasizing that "[a] reasonable

accommodation request is a one-time occurrence" or "discrete event"). Rather, the prolonged

denial of a reasonable accommodation can underlie a hostile work environment claim only when

"all the circumstances" would support such a claim. Floyd, 85 F.Supp.3d at 517 (quoting Oncale

v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998)); see also Parker v. State of Del.,

Dept. of Public Safety, 11 F.Supp.2d 467, 475 (D. Del. 1998) (rejecting plaintiff's attempt to

claim a hostile work environment based largely on individually actionable instances of discrimination).

In the instant case, Plaintiff alleges that McClard denied her request for reasonable accommodation on two distinct occasions: at the end of the 2012-2013 school year,[6] and on April 15, 2014, when McClard declined to present Plaintiff's request to the school board. ECF No. 9 ¶¶ 22, 53. She further alleges that McClard disciplined her and threatened her with termination on three occasions for sitting down during the workday. Id. ¶¶ 28, 41, 45, 46, 49-51. Finally, she asserts that coworkers "openly discussed" and "joked about" her condition, although she does not provide any specific details to support these conclusory allegations. Id. ¶¶ 58-59. These are precisely the type of "offhand comments" and "isolated incidents" that courts have routinely held to be insufficiently hostile to support a claim under Title VII or the ADA. See, e.g., Koch v. White, 134 F.Supp.3d 158, 168 (D.D.C. 2015) (allegation that the defendant denied plaintiff reasonable accommodations "for years", coupled with angry comments from his supervisor, fell "well short of alleging a hostile work environment"); Lescoe v. Pa. Dept. of Corrections-SCI Frackville, 464 F. App'x 50, 54 (3d Cir. 2012) (holding that frequent "jokes and comments about [plaintiff's] weight, the size of his belly, and not being able to see his groin area" did not "reach a level of sufficient severity or pervasiveness to alter the conditions of Lescoe's employment"); Stough v. Conductive Techs., Inc., 2014 WL 3421069, at *5 (M.D. Pa. Jul. 11, 2014) (granting summary judgment and finding alleged conduct not sufficiently "severe or pervasive" where plaintiff with Parkinson's disease alleged that his employer sent him a booklet on Parkinson's disease and a supervisor told him that "his new position was 'not so bad' considering that he had Parkinson's disease"); McCutchen v. Sunoco, Inc., 2002 WL 1896586, at *12–13 (E.D. Pa. Aug. 16, 2002) (granting summary judgment in favor of employer on hostile

---

[6] As noted above, this incident is time-barred and cannot be considered by the Court.

work environment claim where employee with partial blindness alleged coworkers called him "useless" and made comments including "for a guy that can't see you know how to look in a book," and plaintiff "didn't have to see, he merely needed to feel around").[7]  In the absence of any such severe and pervasive conduct, Plaintiff's hostile work environment claim must be dismissed.

### IV.    Conclusion

For the reasons set forth above, Defendant's motion to dismiss [ECF No. 10] will be granted in part and denied in part.  Defendant's motion will be granted as to Plaintiff's hostile work environment claim (Count III) and denied in all other respects.

An appropriate Order follows.


/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

---

[7] Plaintiff's citation to Owens v. Allegheny Valley Sch., 869 F.Supp.2d 653 (W.D. Pa. 2012), is unavailing.  In Owens, the plaintiff was consistently forced to perform menial and degrading tasks due to his race.  Id. at 662. Plaintiff suggests that being forced to stand up all day despite her bowel condition is cut from the same cloth.  We disagree.  Unlike the plaintiff in Owens, Plaintiff was not forced to do anything that was inherently demeaning or degrading; rather, she was instructed to perform her regular tasks in the ordinary manner, but without the benefit of the accommodations that she requested.  While this conduct may be actionable as a failure to accommodate, it does not elevate her work conditions to the level of degradation suffered by the plaintiff in Owens.